et al., Phase 5, 18-0223. Counsel ready? Yes, sir. Make your seat. Counselors? Your Honors. It pleases the Court. Today I'm going to be arguing on four separate issues. Your name is Tim Chartrand. I'm sorry. I am for the opponent. Today I'm going to be arguing on four separate issues before you. The first is an issue of a question of fact. It's in regards to the 21-foot railing versus the 5-foot railing. The second issue is going to be in regards to the duty in this case. The third issue is proximate causation, which again is a question of fact. And the fourth is if I'm confined to the 5-foot railing, whether there's questions of facts in regards to that. Now, as far as the first issue goes, this issue of the 21-foot versus the 5-foot red railing, the way that this came about in this case was Malika Chairs, who is the mother of the minor plaintiff, Anton Chairs, and the representative in this case, her deposition was taken first. And while she was being And she was describing it like this. And the defense counsel noticed that and said, I see that you're holding your hands out to describe this railing. Did you know that your wingspan is the same as your height? What's your height? I don't know. You look about 5 foot. If your height was 5 foot, then your wingspan would be 5 foot. So wouldn't you agree that this railing that fell on Anton was 5 foot? That's how this entire issue came about. It came on the fact, the scientific fact that is presented that the wingspan and the height are the same. It came on hypothetical. That's how this issue came about, with a long line of leading questions and hypothetical questions. That's how we got down this. And we acknowledge that Malika did testify, that she estimated to be about 5 feet. We have never denied that. What we have asked from the very beginning, and we remain in our position today, is that we have to look at the entirety of the record within the context of that testimony. We don't isolate just a portion of that testimony and say, your case is done. It's done. It's over with. That's what the defendants want you to do. But it doesn't fall in line with the Illinois cases that we've cited. Those cases, and I'm going to touch upon a few, are Hanson with an O, because later you might hear Hanson with an E, so I want to make sure that that's clear. In that case, it was a case where the plaintiff was a passenger. She testified that the car in front of her stopped in the middle of the lane, and it had no working taillights. The court said, well, let's put that into context. The plaintiff also testified that she didn't see those taillights until immediately before the impact. She also didn't see cars coming in the opposite direction. So we look at how she observed these taillights. We also look at the testimony of other witnesses, who said, the taillights were working. We cite to the McCormick case, where the plaintiff said, the allegations in my complaint are actually not allegations I'm bringing against the defendant. Well, they said, let's look at the context of that testimony, and let's look at the testimony of other witnesses. And we cite to other cases that say exactly that. The Thomas case, where they estimate how many feet behind the plaintiff they were following. That was a rear end collision case. The Misch case was two bus lengths is how much they estimated before they put their turn signal on, looking at the other testimony of other witnesses, as well as the context in which that was put. And then the Smith case, which is a Fifth District case. That case was a medical malpractice case. And in order to find a newbie against a physician in a medical malpractice case, you have to have a physician-patient relationship. In the answer to the complaint, the physician defendant admitted that, at all times relevant, they were the physician for this plaintiff patient. Well, the court said, we have to look at the context there, because there is testimony out there from a nurse who said that the entire time, she treated the patient, not this physician. And they found that the jury could conclude there was no patient-physician relationship, even though the doctor defendant testified that there was in his answer. And that's what we're asking the court to do. Let's look at the entirety of the record, not just an isolated piece of testimony. And when we do that, we find that Malikia also described the railing as red, the same color as the 21-foot railing. She was asked to draw a photograph of the railing that fell on the end top. Which, as you can see, this is the 21-foot railing. It's the same exact configuration, looks exactly the same as the 21-foot railing. The defendants also want to point to other witnesses, post-occurrence witnesses, Vincent and Aliyah, in support of their contention, which is the contradictory nature of their position is that they want to look at witnesses to help their position, but when I say I try to combat that and look at other witnesses' testimony, they say, no, you can't do that. But Aliyah also drew a photograph. She came around the band and saw this railing on her brother. And again, it's the same exact configuration as the 21-foot railing. So the question is, is there a genuine issue of material fact? Is that the argument? That's the argument. I'm arguing that this should go to the jury because it's in a reasonable inference that the 21-foot railing was more likely than not the railing that fell on Anton on the night of the incident. It's a question of fact. We're at the summary judgment stage. And I also presented evidence from Mr. Gores, who's the sole shareholder, and the president of Athlete's Shoes, who testified on the date of the incident, the only railing that could have tipped over was the 21-foot railing. You can't ignore that. The second issue I'm going to be talking about today is the duty. The defendants have argued that they had no duty to the Anton chairs. Most of that was within the context of the 5-foot railing because Bierman, who fabricated the 21-foot railing, says we have no duty if it was a 5-foot railing. But again, I argue that's a question of fact. As far as duty goes to Athlete's Shoes, we've cited the general rule as the trespassers is that you have to refrain from willful and wanton conduct. But of course, there are exceptions, and we've cited three. The first is the Kahn Doctrine, which is specific to child trespassers. And that doctrine goes as follows. That a property owner owns a duty of reasonable care to children trespassers that they knew or should have known were in the area of a dangerous condition. And in that dangerous condition, the risk of it wasn't appreciable to the child trespasser. Now, the defendant, Athlete's Shoes, attacks this particular exception on two separate parts, and the trial accordingly attacks it on one part. Athlete's Shoes says that we haven't presented any evidence that demonstrates that there were child trespassers that habitually frequent this particular area near the railing. And then they also argue that it was an appreciable danger by Anton, who was nine at the time of the incident. We've cited a number of facts as to how Mr. Bores, again, the sole shareholder and president of Athlete's Shoes, was acutely aware that there were trespassers in this specific location near the railings. In fact, he had his property, he had it surveyed because there were so many stats about trespassers in this area. There were trespassers from the Days Inn. They put particular parking blocks. There were trespassers from the health club nearby. There was a playground on the Days Inn property that wasn't very far from this particular railing area. The hotel was made up of two buildings that had hotel rooms. The parking spot for the second building where the family was staying was mere feet from the railing that fell. So we've presented a number of facts that we believe is a questionable fact to the jury as to whether they should have known that children frequented this particular area where we have the alleged dangerous condition of the railing. And then as to whether it was appreciable by Anton, the trial court conclusively states it was appreciable by Anton. There's no analysis. The obvious dangers that have been shown to be appreciable by minors in the state of Illinois have been fire, water, trains falling from a height. The only case cited by the defendant that's remotely close to the condition we have at issue was in the Shoal Case, which was a swinging gate. The minor had played on it a number of times prior to his injuries. His parents told him don't play on that gate. He also, the minor, testified that he knew if he didn't move his hand, the gate would pinch his hand, which is exactly what happened. We have testimony both from the minor and from the parents in regards to not going and playing there and that the minor knew that he would be injured. Here we don't have that. This was the first time that the family had ever been to this property or as far as I know Effingham, Illinois. So we don't have an appreciable danger in the context of the cases that have been cited by the defendant. Now what I believe is in a more analogous case to this is the con case itself. In that case, an 11-year-old kid was playing on a pile of lumber and the lumber fell on it. Same kind of case here. The railing fell onto Anton chairs. It wasn't that Anton chairs fell from the railing or a height. The railing fell onto Anton chairs. That's the more analogous case. Con also talks that it was during summer vacation. Same here. It was also near an area where people frequent. In the con case, it was two alleyways. Here it's the days in or the multitude of businesses that surround this property. Second exception we talk about is the frequent trespasser doctrine. Here you don't have to have a dangerous condition. The duty of ordinary care is just to protect the trespassers that frequent a particular area that the property owner knows they trespass. Again, we cite it to a number of facts that I've already illustrated. And I won't go through again. And the third duty, an exception to the general duty of no will for or what in conduct, is Restatement Section 337, which was established by the leaders of Chicago Transit case, which states that a property owner has a duty to warn those about a dangerous or an artificial condition on the property that has the ability to cause substantial bodily injury or death. Those are the duties and the exceptions in which we argue apply to this case through the facts of this case. Now, the third issue that I'll speak about is Proximate Causation, because the trial court does discuss that. Proximate Causation is a question of fact. And it can be established through either direct or circumstantial evidence. We have presented both of those. The direct evidence that we've presented is that when Vincent went around this van, he asked Anton, Anton said at that time he was able to speak because the next day is when all the medical issues start to happen. Anton says the pole fell on me. In addition, the mother asked Anton what happened, and he said it fell on me. We also have circumstantial evidence where Leah comes around the van, sees this railing on top of her brother, helps him get out from under it, and there's various other circumstantial evidence that I cite in my brief. This is more circumstantial evidence and more direct evidence than many of the other cases that I cited, which say that proximate cause can be proven solely based on circumstantial evidence. And the last point I want to make is that if, for argument's sake, this court were to say, 10, you're confined to the five-foot railing, it's what Malikia said. And there still are questions of fact in regards to that five-foot railing. And the questions of fact are constructive notice. Should the property owner or the employees have known about this dangerous condition? That's a question of fact. And the second is whether they caused or created the five-foot railing, which, again, was the same color, the same configuration, the same material makeup as the 21-foot railing, and in the same exact area. Those are the issues. And in order to believe the defendant's position that it was a five-foot railing, look at the evidence. Somehow, someway, between 8 p.m. when athlete's shoes closed and 9 or 10 when that family parked the van, sometime in between there, a five-foot railing with the same color, material makeup, and configuration as the 21-foot railing in the same exact area got on that property. It was never there before. It was never there afterwards. That's what you have to believe in order to believe the defendant's position. It's not a reasonable inference. When the record's shown to the jury, a reasonable inference, and the light was favorable to that movement is that the 21-foot railing fell upon Anton Scherz. And we're asking this case be remanded so that it be tried on its merits. Thank you. Thank you, counsel. Good morning. My name is Loretta Griffin, and I represent Athlete Shoe, Inc. May it please the Court and counsel. We are here on a summary judgment, and it's a de novo review. These are the things we agree on. The event is this young man coming out of his family's van as they park their car. This is their story. These are the three witnesses we have as to what happened, the mom, the father, and the sister. They park a van with a U-Haul behind it on the Days Inn property. It's adjacent to my client's property. They get out of the car. Maybe the windows are down, but for sure the doors are open. Anton gets out of the car. He's nine and three-quarters years old, and somehow he ends up with a piece of rail on top of him, according to the testimony of his family members. The sister, who's about a year and a half, two years older, lifts it up. He comes out and says he's fine. The event is not reported to anyone else. No one else knows about it. My client testified he knows about it when he gets served with a summons for this case in 2014, fall of 2014. The issue in a case like this should be framed by our pleadings. In this case, the plaintiff filed a complaint in 2014 that alleged that a heavy concrete rail broke because they had a fence or a rail system that was in disrepair, and that the miner leaned on the heavy concrete piece of rail and the rail broke. That's a complaint that's still pending. It wasn't amended after the plaintiff testified in early 2016, and it wasn't amended in the face of the summary judgment. On that basis alone, not a single fact of evidence supports that allegation. All three family members said that the railing they described, and all three described it as a five-foot railing or an approximate five-foot railing, was intact post-accident, that it was metal and hollow. We don't have just Malikia saying five-foot. We concentrate on Malikia because of the Illinois rule that does not allow a pardoned plaintiff to negate their own sworn testimony. We cited those cases. The defense cited those cases, saying she's bound to that for the summary judgment stage. But it's beyond that. Malikia says a five-foot. That question could not have been fair by my co-defendant's counsel. She describes it as five feet. She does hold out her hands. He invokes a rule of, I'm going to call it physics, I could be wrong. And we get an approximate five feet. She draws the sketch which counsel held up for you, which is Exhibit 12 to Malikia's deposition. Five feet. Counsel shows her the picture of the long rail. It's four times in length. It's 20 to 21 feet in length. Is this the rail? No, absolutely not. Malikia disavows it. Aaliyah disavows it. Vincent disavows it. This is not the rail. We're the defense. We're working off a complaint that says a piece of concrete rail was in disrepair and it broke. We get testimony from the only three people on scene, their family members. They say it's a five-foot rail, and it is not. It is not the 21-foot rail. We move for summary judgment because, yes, my client testified, this is the only piece of movable rail I had. I had it made by Gehrman so that I could have a construction. If I was redoing my dock in the back, I could have the construction done and have a movable rail for trucks to move through if they needed to. We could move it. It took two adult men to move it. We move. Both defendants move for summary judgment. There's still no affidavit offered. No one comes forward and says, no, not the five-foot rail. The only one arguing must have been the five-foot rail is counsel, counsel for the family. None of those family members came in and said, you know what? Wrong. I was wrong. It was a 21-foot rail. I've looked at it all again. I've thought about it. We don't have that. We have three people swearing under oath that it was a five-foot rail. The three family members who are there, either the windows are down, according to mom, or the doors are open, according to everybody, on the minivans where the doors slide open. No one sees anything. None of the family members see this accident happen. Nobody hears anything. I asked the father, after the accident, tell me how far that rail that you saw was from the side of your van. I don't know. Can't say. There isn't one single detail in the testimony of these family members that allows the plaintiff to come into this court and say the trial court was in error because he should have gone with circumstantial evidence on some of the elements of this cause of action. This defendant moved on duty, proximate cause, and no notice of the condition of a five-foot rail on its premises. It never had one. Bierman does our work for two local Effingham businesses. Bierman does our railing work for us. They never made a five-foot rail. There's no evidence that we had a five-foot rail. We assume that's true for purposes of this motion because the three plaintiffs said there was a five-foot rail there. If there was a five-foot rail there, and I'm kind of working in reverse, we didn't have notice of that condition. It's much like the puddle of water in Hays v. Bailey. It wasn't there an hour and a half earlier, and then it was there. That's insufficient for notice. So for a premises case, and that's where they're attempting to impose a duty on us. This is a stranger to us. We didn't invite him on our land. He was allegedly going to be a guest at day's end. He comes trespassing on our land. That's another facet of the duty argument, but notice alone, which was my last point before the trial court. If someone put a five-foot rail in that configuration, which looks very much like our 21-foot rail, if they put that on our land that evening and it was there, as the plaintiffs testified, we had no notice of that condition. We accept the plaintiff's testimony as true when we go for that summary judgment because that's what the law says. We are mandated as defendants to accept that as true. The plaintiff was not allowed to go to the trial court and ask the trial court to disavow it without any contrary evidence and is not allowed to come here and do the same. There's no law to support that. The duty issue on Kahn fails for two reasons. Both are the elements that are required. Children play in the area of the condition or risk. Here we had fencing all around the property. My client was asking if children play in that area, and he said no. It was unequivocal. There was no contrary evidence. He didn't see children playing in any of the fencing. He saw some of his 16-year-old employees sitting to take their break on some of the side rails. But not even looking at the 21-foot rail alone, children did not play on the railings. As counsel just noted, there's a full playground at the day's end. It's right there. It's in some of the photos that are of record in this case. Just like there's no evidence the child was playing at the playground, there's no evidence that children played on our railing system. So that's one of the necessary elements for that exception to the rule that a landowner doesn't owe the duty to the child trespasser. You have to have evidence that children habitually play there. I'm picking out a couple of my cases because all of these cases are different. You have the 17-month-old that wanders into the marshy water and drowns. The court says no duty. You have the child that breaks through the ice, falls into the water and drowns. No duty. So there's a number of different circumstances that arise. Here, the case I'm going to draw the court's attention to is Johnston, where the child climbs up to get the baseball and is electrocuted. And a few years earlier, another child had been electrocuted. And our court of review says isolated incident because the children aren't playing in that area, even though that property owner has nets up. The court says no duty. Well, here, this is further to the other side of that. We don't even have children playing anywhere in the area. There's nothing that connects children to this back area of our receiving dock on our property. If you don't get past that, there's no duty under the con analysis. The other is, is this a condition that a child of like age would appreciate and avoid? This is problematic. I argue this at the trial court level. We don't know precisely how this child interacted with this realm. If the child interacted with a five-foot mill, we don't know what happened because none of the family members can tell us anything about what happened. We don't even have a post of an excited utterance type statement. He says the pole fell. Well, we know that the sister's picking a pole up off of him. That somehow the pole he made contact is one thing. How did that happen? I put the affidavit of a mechanical engineer on record when I move for summary judgment with purpose. It takes force to move a rail. I addressed both the five-foot rail that we didn't have and the 21-foot rail that we did. It takes 9.6 pounds of force at the right spot at a minimum to move that five-foot rail as it was allegedly constructed as we see in the sketches. 23 pounds of force at the right spot to move the 21-foot rail to cause it to tip. There has to be an interaction. This isn't spontaneous. That can't happen mechanically. We don't know what happened with this child. But this is a simple construct. Something about the length of our council table here with two feet on it. Trial court said that type of thing a child can appreciate a boy. Is that consistent with the case laws that develops in Illinois? At this point, yes. You have a child coming off the slide. Not only the height, but the landing surface. The court says, no, you fall, you get hurt. All of the cases, the kids are walking along the rail and fall into an adjacent tree stump. We have the one where the young man is climbing the tree. Our Supreme Court says, no, you should have appreciated that. So the trial court's ruling there is consistent. I'm going to submit to you it's consistent for another reason. This is a point I did make in my briefs envelope. He's with his parents. This young man, they pull next to this area here and they open that car door. His parents are there. And what does our Illinois law say? Consistently, the primary responsibility for the safety of a child lies with its parents. So con, where they're playing on the lumber, some of the sand pile cases, a lot of the cases that we looked at, the parent's not there. They get the kids out. The electrocution case, the parent's not there. They're right there. The primary responsibility lies with the parents. But the condition itself, which our trial court rules, what we know about this condition, it takes force to move it and it's a simple rail construction, much like a sawhorse a little bigger and made of metal. So you don't have either of the conditions there and then you've got proximate cause. Proximate cause is a question of fact when you have evidence as to proximate cause. When you don't, the Illinois case law is replete. If you don't have enough evidence as to what happened, then summary judgment should be entered for the defendant. And it goes back to your directed verdict stage. McInturff, you've got the dead body at the bottom of the stair and the handrail violates code. Court says, but we don't know why he began to fall. You've got Kimbrough. You've got Peterson. You have got to have some evidence as to why the incident happened. And here there's none. And there's only three people who know who were on scene, and they're all family members. So the argument as to we should go with circumstantial evidence and let it go through a jury doesn't lie here. Because the cases cited have actual evidence. They have eyewitnesses. They have things that tie it together, like the woman with the cords. I think it's how she just pulled it around her legs post-accident. So did she trip on the cords? Well, enough to send it through. I'm going to address the Lee case. I don't think it applies to this child trespasser. I think the child trespasser is governed by con and those principles. But Lee also doesn't apply because Lee is invoking a section of the restatement that addresses an extra hazardous condition. It's an electrified rail running at ground level through the city. But you can't, I mean, this is not an electric, this is a simple construct. It's not an electrified rail. It doesn't present that kind of a danger. The frequent trespass cases. There are cases where people use a path regularly. And in the Scozilla's case, which I cite, the court says, well, you're not even invited for that. There's no duty at all. You're still trespassing. At Vega, you've got a warm path through an area, and the court says that's not enough to show frequent trespass. And the duty there is refrain from active negligence. Do not hurt somebody if you know that they're walking through there. And I think the seminal case on that is where they're, and I can't give you the name on it, they're throwing railroad ties off the top of the trestles when they know that there are homeless people underneath. That's different. And that's not our case. I believe the trial court was correct on all three bases. It only needed to be correct on one. And I think the de novo review should merit the same result. On behalf of Athlete Chewy, we're asking that the court affirm the summary judgment that was entered in favor of the defendants. Any questions? Thank you, sir. Thank you. Good morning. My name is Craig Unrath. I represent Beardman Welding, Incorporated. Just briefly, it is uncontested that Beardman Welding fabricated only one movable fence. It was 21 feet long. We submitted an affidavit to that effect, and there was no contrary affidavit submitted. Accordingly, that is considered admitted for purposes of summary judgment. Now, it's also undisputed, as everyone's noted, that all three witnesses said it was a five-foot fence. I'll only add one thing. Have you ever heard of somebody describing a 21-foot fence by holding their arms out? That's all I have to say on that. Second point, all three witnesses looked at a photograph of the fence that Beardman fabricated, and all three witnesses said that's not the fence that fell on Anton Chairs. Now, the law is clear that a party opposing summary judgment must present some evidence that would arguably entitle them to a recovery at trial. Here, their burden is to come forward with some evidence that the fence that Beardman fabricated is the fence that caused the injury, and they don't have any evidence on that. What they have is speculation. First, they speculate that all three occurrence witnesses got it wrong. They speculate that because the 21-foot fence is the only fence there, well, that's the only movable fence, therefore it must have been the one that fell on Anton Chairs, very similar to a Res Ops allocator claim, but, of course, that was not alleged. Now, that's not true. That also is speculative, and more importantly, it directly contradicts the testimony of the plaintiff, Malikia Chairs. Now, in his argument, opposing counsel said, well, they pulled up in front of the fencing that actually fell on Anton Chairs. That is not her testimony. Her testimony is that they pulled up their car near the place in the photographs in Exhibit 11 where the pickup truck is located, and if you look at the photograph, there's no railing there. Then she points out that there was railing all the way to the end of the lot, all the way to the boulder. I specifically included a photo in my appendix showing the boulder looking forward. In other words, according to Malikia Chairs, there was fencing there at the time of the accident, but at the time that these photos were taken, that fencing was gone. So when plaintiff says there was only one movable fence there, plaintiff is contradicting her own testimony. She says that there was fencing all the way down. She says there was a five-foot movable fence. She says that our fence absolutely did not cause the injury to her child. Plaintiff must come forward with some solid evidence that's beyond speculation. Here, in this case, my client did no wrong, absolutely did no wrong, and there is no evidence that they did do any wrong other than rank speculation. That's all I have. If there are no questions, I urge the Court to adjourn. Thank you very much. I won't be very long. I just want to touch upon a couple of things. Your Honor, what Malikia said, who is a party to this case, not Vincent and not Aliyah, they're not parties to this case. We have to look at what Malikia says. For it to be a judicial admission, it has to be by a party. And we have to establish the context. Now, Loretta's right. We look at those. We look at the testimony. But there's multiple cases that say you look at the testimony within the context that it's in. I cited those cases to you. I cited six of them. You look at it within the context, and you also look at testimony from other witnesses. You do not isolate a portion of that. And if you look at all the testimony, not only from all the rest of the testimony from Malikia, but also the rest of the testimony from Aliyah and Vincent and Mr. Bores, who's the sole shareholder and president of Athlete's Shoes, and Teresa Martinez, who was a child abuse and neglect investigator who came to the scene a couple weeks afterwards to investigate and did a thorough investigation of the 21-foot railing, it's a reasonable inference for the jury to conclude that the 21-foot railing was the railing that fell off. This is the context in which the railing was seen by Malikia. It's around 9 or 10 o'clock, dark outside. They pull up next to a set of railings. This incident occurs. They won't measure the railing. They observe it after it had fallen on their son's stomach. And yet, they want to make sure that we're confined within that 5-foot estimate. That was based on a hypothetical question and a leading question. This should go to the jury to decide. Now, we read about it in our pleadings. What our pleading says, it says, or otherwise fell on the plaintiff. It does not say that simply that it broke. It doesn't mention break. But it also says, or otherwise fell on the plaintiff. If this is an issue with the pleadings, then as I ask the trial court, pursuant to 5-2-1-0-0-5, allow me to live my complaint to come forth with the proof. They didn't allow that. The gradient summary doesn't. Now, Loretta also says, if the plaintiff hasn't come forth, Malikia hasn't come forth and provided an affidavit to contradict her testimony, or come forth and said my testimony was wrong, if she did, they'd be all in arms. Because they know. We're not allowed to provide an affidavit that specifically contradicts the testimony. That's the reason why she hasn't come forth and said that. We're asking you to see it within the context that it was presented. In the dark, for a short period of time, after it had fallen on the stomach of her son. That's what we're asking. Now, the Kahn Doctrine, one of the elements of the Kahn Doctrine is that we do not have to prove that the children played in the area. The Kahn Doctrine is very specific that all we have to prove is that children habitually frequent the area, and whether the property owner knew that, or should have known that. The constructive knowledge aspect is a question of fact. We have to prove that there have been children that have been playing on this railing, or anything like that. We don't. It's not an element of the Kahn Doctrine. And the last analogies, Loretta talked about proximate causation, and she cited the case that I cited for you, which is Hosch. Which, gentlemen, because of his injuries, don't know what happened to him. But the next thing that he knows, he has steel wire wrapped around his feet, and he's on the ground. Has no idea what happened to him. Post-occurrence witness comes, sees this. Hosch case says, enough to get to the jury. Circumstantial evidence from the post-occurrence witness' observations were enough to get to the jury. What do we have in this case? You're right. I didn't cite a case specifically to a railing falling on a young man. Sorry, I didn't find that in the Illinois law. But what we have is three members of this family coming around this van and seeing this particular railing on Anton Scherz and asking him what happened to which he said, it fell on me. That's even more evidence than we had in the Hosch case. You can prove proximate causation by circumstantial and direct evidence, and we bet both on that. For that reason, Your Honor, on behalf of James Dillon, again, I'm asking that this case be remanded so that it can be tried on its merits. Thank you. Okay. Thank you, counsel, for your arguments. We'll take this matter under advisement.